JAMES ABORN, Administrator, *vs.* MARY B. PADELFORD.

A trust is created in favor of one for whom land is acquired under a promise to buy it for his benefit, if he has an interest in the land and parts with that interest on the faith of the promise made to him. It is immaterial whether the interest is legal or equitable, if it be an interest recognized by law. Parting with it on the faith of the promise is a valuable consideration.

Where there is no acquisition by means of such a promise, and no interest to part with on the faith of such a promise, no trust arises.

A constructive trust will not be established after the lapse of twenty-four years.

When letters are relied on to prove a trust in realty, they must identify the property and disclose the terms of the trust. Proof that the letters relate to the property in question must be demonstrative.

*Taft* v. *Dimond*, 16 R. I. 584, affirmed.

To constitute a trust as of personalty in rents and profits received, they must be specifically set apart or held in trust.

*Ray* v. *Simmons*, 11 R. I. 266, affirmed.

BILL IN EQUITY to establish a trust.   On demurrer to the bill.

*August* 2, 1890.   STINESS, J.   The complainant, administrator of the estate of Celinda H. Aborn, sets up in his bill that the respondent took certain parcels of real estate as trustee of the intestate; for the rents and profits of which, during the life of said Celinda, he asks an account.   The facts set forth in the bill, out of which it is claimed the trust arises, are substantially as follows: In 1861, the intestate and respondent, being sisters, the latter then a married woman, now a widow, were tenants in common, each of an undivided half, in four estates, referred to in the bill as the Weybosset Street estate, the Westminster Street estate, the wharf estate, and the High Street estate.   Mrs. Aborn's half of the Weybosset Street estate was subject to two mortgages to Henry A. Hidden in the sum of $26,500; and her half of the Westminster Street estate was subject to mortgage to the Bank of North America in the sum of $9,000.   In April, 1861, Messrs. Mount, Hall & Co. brought suit against Mrs. Aborn, attaching her interest in all the above described property, except the wharf estate, and obtained judgment for $10,766.25 and costs.   At the time of the attachment, the value of her half of the real estate being largely in excess of her incumbrances and indebtedness, she was unable, for want of ready money or other property, to pay off and discharge the mortgages and attachment, and to obtain for herself the benefit of the full value thereof, and to preserve the residue over and above her indebtedness.   In view of her embarrassed situation, the respondent, at or about the time of the attachment, "promised and agreed to and with said Celinda to aid her in saving such residue of her estate by advancing the necessary money and buying in, upon the account and credit and for the benefit of said Celinda, such undivided interest in said estate, and to hold, manage, and dispose of the same, or the avails thereof, subject to her own claim for reimbursement for her advances and outlays, to the intent and purpose that the residue or balance thereof, over and above such advances and outlays, should inure to the benefit of said Celinda.   And the

said Celinda, relying on such promises and agreement, and reposing confidence in said defendant by reason thereof and of their close relationship, made no effort or attempt to obtain money, aid, or assistance from others, or to procure bidders on said property, or otherwise to make any plan or arrangement for preserving her remaining interest."

July 27, 1861, Henry A. Hidden sold the Weybosset Street estate under the power of sale in his first mortgage. C. A. Updike was the purchaser, who conveyed it to Hidden, August 2, 1861. Mrs. Aborn made an assignment of all her property to said Hidden, for the benefit of her creditors, December 3, 1861, with power to sell at public or private sale. April 12, 1862, the Bank of North America sold the Westminster Street estate under its mortgage ; at which sale the respondent bought Mrs. Aborn's interest for the sum of $9,700. September 12, 1862, the interest of Mrs. Aborn in the land attached by Mount, Hall & Co. was sold at sheriff's sale under execution ; her interest in the Westminster Street estate being bought by the respondent for the sum of $51, and her interest in the other estates by J. C. Wilmerding, who conveyed to H. A. Hidden, October 1, 1862, for $1,000. October 29, 1862, the respondent, " in pursuance of said promise and arrangement made with her sister as aforesaid, purchased of said Hidden, for the sum of $30,000, all his, said Hidden's, interest in and to said Weybosset Street estate ; " and also, for $500, all the right, title, and interest which he had as assignee of said Celinda in and to the wharf lot. October 7, 1862, the respondent sold the whole of the Westminster Street estate for $30,000, one half of which sum represented the part which had been owned by Mrs. Aborn. The wharf lot was taken by the city of Providence, in 1873, for widening Dyer Street, and $3,066 was awarded as compensation for the whole lot. The bill then goes on to set out acknowledgments of the trust by the respondent, orally, in letters, and in accounts, since she acquired the property.

The respondent demurs to the bill.

The primary question is, whether the bill discloses a trust. The principle on which the complainant bases his claim is, that " a trust arises when the one who has got the land has been enabled to do it only by dint of his promise to convey it to another, upon the faith

of which promise the latter has parted with some interest in the property in question." Browne on the Statute of Frauds, § 96 *a.* Two things must concur in the application of this principle, viz., that one party has been enabled to get the land as he did by virtue of his promise ; and that the other has parted with some interest in the land upon the faith of the promise. The cases cited by the complainant fully sustain this rule ; to which may be added *Jenckes* v. *Cook*, 9 R. I. 520, 525. The surrender of the interest in the land, or the dealing with reference to it whereby it is purchased at a sacrifice of that interest, is regarded as the consideration for the agreement, out of which, together with the fiduciary relation thus constituted between the parties, the trust arises. See Perry on Trusts, § 215.

The doctrine can hardly be better stated than in the following passage from the brief for the complainant : " One of the essential elements in the class of cases under consideration is, that the party for whom the property is acquired, under an engagement to buy it in for his benefit, has an interest in the property ; and what distinguishes this particular class of cases from others is, that he parts with that interest on the faith of the promise made to him, and thus gives a valuable consideration. It makes no difference what that interest is, or whether it be legal or equitable, if it be any interest which the law recognizes." Accepting the rule, then, as stated by the complainant, we have only to apply it to the facts set forth in the bill. The High Street estate did not come to the respondent, and so is out of the case. With reference to the other estates, a comparison of dates is important. The respondent did not buy the Weybosset Street estate at the mortgage sale, nor until a year and a quarter afterwards. At that time Hidden had got in the attachment title, whatever that may have been after the sale under the mortgage. Every vestige of title in Mrs. Aborn to this estate, legal and equitable, had been wiped out by the sales. If they were valid sales, there was nothing left for the assignment, even, to operate upon in this estate. The respondent bought of Hidden at private sale, which he was free to make or not to make, so far as appears, and at a price apparently above the amount of his claim upon it. By what promise did she obtain it ? None is alleged. What did Mrs. Aborn lose by the sale ? Nothing at all.

There is no suggestion of any promise to, or agreement with, Hidden, on the strength of which the respondent obtained the property. But had this been so, such a promise on the part of the respondent would have been purely voluntary, since Mrs. Aborn had then no interest in the property to surrender or to be sacrificed; nor could she have been led to do or to forbear anything at all in regard to it. The bill therefore fails to show either of the grounds upon which a trust may be implied, viz., purchase by means of a promise, and surrender of an interest or claim on the faith of it. The same is true of the wharf lot; for although this was purchased of the assignee, with a possible equity in Mrs. Aborn in the proceeds, after the payment of her debts, yet it was bought at private sale, and nothing is averred to show that it was not a fair sale. In the absence of any averment to the contrary, it is to be presumed that the assignee was faithful to his trust.

As to the Westminster Street estate, the case is somewhat different. The respondent bought this estate at the mortgage sale, and the allegations in the bill in regard to Mrs. Aborn's conduct, induced by a promise to buy for her benefit, may therefore be applicable to it. But the bill shows that the respondent might sell property to reimburse herself, and that she did sell this estate in six months after her purchase. The only claim which Mrs. Aborn could have had was in the balance over and above what the respondent paid for it, which appears to have been about $5,000. But that sale took place nearly twenty-four years before the death of Mrs. Aborn, and it would be a great stretch of power to establish and enforce a constructive trust after such a lapse of time. See Perry on Trusts, § 228 and cases cited.

But it is urged that the respondent acknowledged the trust in certain letters. The expressions quoted from the letters, like the language used in *Taft* v. *Dimond*, 16 R. I. 584, are at best a rather loose acknowledgment, and by no means demonstrative. Assuming for the present that the expressions imply a trust of some sort, we cannot tell what property it includes, nor the nature and scope of the trust which is claimed to be acknowledged. Lewin on Trusts, *56. Since the Weybosset Street estate is the only one held by the respondent, the expressions may as well relate to that as to any other, thus importing a gratuitous and purely

moral obligation with reference to it, rather than a constructive, legal trust, which the bill shows did not exist. The relationship of sisters leads more naturally to inferences of generosity than to suspicions of fraud; and so it would be no strange thing if one, able to do so, should aid an unfortunate sister from the proceeds of property she once had owned, at the same time to soften the feeling of dependence, speaking of it as her property. But the letters are not even thus explicit. One says: " I would advise holding on to all you have, not giving to any one at present. Your money is your best friend. At present it would be unwise to give to any one by will. When I see you I will tell you more reasons for my desire for you to hold on to what you hold. You have signed away property once; I hope you will not do it again. Please destroy this when read." These expressions seem clearly to relate to property held by Mrs. Aborn in her own name, which she can give away, sign away, or dispose of by will. If so, it cannot be the property claimed in this bill. The letter of December 4, 1884, is more nearly in point: " I cannot see why you should suspect either of us " (the respondent and her son) " of wrong-doing, as my books will show the manner in which I have managed for you so many years. J. P." (the son) " has wanted me to pay all, and take myself from all care of your affairs, but I know you would not now possess one dollar you could call your own had I not persevered through good and evil report and saved your remaining interests." This certainly looks as though the respondent considered she had to do with something belonging to her sister; but what was it? The only " remaining interest " which had been " saved" is in the Weybosset Street estate, since the others had been disposed of at prices less than the amount required for reimbursement, if a trust were established. And so the bill claims a fund arising from rents and profits, which could only come from that estate, or the wharf lot for a time, because the respondent sold the other estate very shortly after she got it. But, as we have seen, any trust declared as to these estates must have been purely voluntary. The respondent may have thought she was bound by her promise to buy for the benefit of her sister, and so have spoken of it. It does not appear that any trust has been constituted as to such rents and profits, as personal property, because it does not appear that they have been specifically

set apart or held in trust, as is required in such cases. See *Ray v. Simmons*, 11 R. I. 266. The court would be utterly unable to declare, from anything in the letters, what property would be covered by a trust, and to what extent the complainant would be entitled to an account.

Other objections to the bill were taken at the hearing, as to proper parties to the suit, etc., which we need not now consider.

*Demurrer sustained.*

*Walter B. Vincent & George B. Barrows*, for complainant.
*Charles P. Robinson*, for respondent.